UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANDREW JAMES MCGONIGLE, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MORIARTY GEM CORP.,<br><br>Defendant. | Case No. 1:25-cv-00398-ALT |

**DEFENDANT MORIARTY GEM CORP.'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULE 12(b)(6)**

**I.   INTRODUCTION**

Instead of just texting "STOP," Plaintiff has filed this putative class action over a few text messages that Moriarty Gem Corp. ("Moriarty")—a local, family-owned jewelry shop—meant to send to the prior, consenting subscriber of Plaintiff's new phone number. Unbeknownst to Moriarty, Plaintiff allegedly became the new user of the phone number in August 2024, shortly before Moriarty's messages were sent.  Plaintiff's Complaint asserts one claim under Subsection 227(c) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5).

Congress created a private right of action in Subsection 227(c)(5), but only for a certain type of "*telephone call*"—not *text messages*.  As everyone knows, Congress included, phone calls and text messages are two entirely different things.  When dismissing an identical Subsection 227(c) claim recently, the Chief Judge of another federal court noted that "[c]ertainly, no ordinary person would think of a text message as a 'telephone call.'"[1]  If Congress would like to expand

---

[1] *Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477-AW-MAF, 2025 U.S. Dist. LEXIS 167366, at *3 (N.D. Fla. Aug. 26, 2025); *see also Jones v. Blackstone Med. Servs., LLC*, No. 1:24-cv-01074-

Subsection 227(c)(5) of the TCPA to provide for a private right of action for text messages that violate the Federal Communication Commission's ("FCC") National Do-Not-Call Registry-related rule, 47 § 64.1200(c)(2), it is of course within its Article I powers to do so. Indeed, it has promulgated recent laws relating to text messages. But it never has for the law that matters here: TCPA Subsection 227(c). Thus, this Court should follow the likes of *Davis* and dismiss this claim for lack of any Congressionally authorized private right of action.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of claims for "failure to state a claim upon which relief can be granted." A court may grant a Rule 12(b)(6) motion to dismiss where a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. And while courts "accept the well-pleaded facts in the complaint as true, legal conclusions and conclusory allegations ... are not entitled to this presumption of truth." *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020) (citations omitted).

## III.  PLAINTIFF HAS NO PRIVATE RIGHT OF ACTION FOR HIS TEXT-MESSAGE CLAIM.

### A.   A Text Message is Not a "Telephone Call."

Plaintiff mistakenly claims that a "text message is a 'call' as defined by the TCPA." Compl. ¶ 62. The TCPA does no such thing. The TCPA only defines five terms, all in 47 U.S.C. § 227(a) ("Definitions"). "Call" is not one of them. Nor is "telephone call," the phrase actually used in

---

JEH-RLH, 2025 U.S. Dist. LEXIS 138371, at *9 (C.D. Ill. July 21, 2025) ("the Court agrees with the Defendant that based on a plain reading of the TCPA and its implementing regulations, Section 227(c)(5) does not apply to text messages.").

Subsection 227(c)(5), the source of Plaintiff's alleged private right of action here. *See* 47 U.S.C. § 227(c)(5) (establishing a private right of action only for a "person who has received more than one **telephone call** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" (emphasis added)); *cf.* Compl. ¶¶ 67-68. The TCPA does *not* define a "call" to include a "text message," as Plaintiff alleges.[2] And the phrase "text message" does not appear in Subsection 227(c), and never has.

When Congress enacted the TCPA in 1991, "telephone call" had a settled, everyday meaning. The sound of the caller's voice reached the called party. There was no written text; we sent letters and faxes for that. Congress had no need to give "telephone call" any special definition, because it had been an everyday experience of Americans for a century. And thus it is an entirely unnatural, anachronistic interpretation to say that when Congress legislated "telephone calls" in 1991, it silently meant to include "text messages." But that is Plaintiff's claim here.

Indeed, as the court in *Jones* recently recognized, "text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS

---

[2] Plaintiff also cites *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) and *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) to support his mistaken claim that the TCPA defines a "call" to include a "text message." Not so. Neither of those cases involved Subsection 227(c) or the meaning of "telephone call" therein. Both of those cases were interpreting "automatic telephone dialing system," technology Congress regulates in Subsection 227(b), an entirely different subsection of the TCPA not at issue here. And both holdings were effectively rejected by the Supreme Court's controlling interpretation of "automatic telephone dialing system" in *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021), which teaches that this Court should not make the same mistake Plaintiff is advocating here by reading another term in a different subsection of the TCPA in a way that does not comport with Congress's plain language. This is consistent with the Seventh Circuit's recent interpretation of "telephone solicitation" in Subsection 227(c), where the court rejected plaintiff's expansive interpretation because it was inconsistent with the "ordinary, contemporary, common meaning" of Congress's express language. *Hulce v. Zipongo Inc.*, 132 F.4th 493, 498 (7th Cir. 2025) (quoting *Delaware v. Pennsylvania*, 598 U.S. 115, 128 (2023)). *Hulce's* interpretive approach—not the overruled *Duran* and *Satterfield*—should guide here.

3

messages." *Jones*, 2025 U.S. Dist. LEXIS 138371, at *10.[3] Even "in today's American parlance, 'telephone call' means something entirely different from 'text message'." *Id*. at *10; *see also Davis*, 2025 U.S. Dist. LEXIS 167366, at *3 ("no ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.").

As the Supreme Court recently held, district courts "should interpret the TCPA under ordinary principles of statutory interpretation[.]" *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). In cases of statutory interpretation, courts must start with the text of the statute to ascertain its plain meaning. *See U.S. v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020). "Unless words are otherwise defined, they 'will be interpreted as taking their ordinary, contemporary, common meaning.'" *Id*. at 852 (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014)); *id*. ("We find words' ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted . . ."); *see also West v. Hoy*, 126 F.4th 567, 575 (7th Cir. 2025) (a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." (quoting *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004))); *Melvin*, 948 F.3d at 852 ("If the statutory language's plain meaning is unambiguous, [the court's] inquiry ends there.").

Telephone calls were commonplace in 1991. But text messaging did not even exist yet. Thus, the only plausible interpretation of Congress's private right of action in Subsection 227(c)(5) for certain "telephone calls" is that Congress meant what it said—and did not mean to silently smuggle in text messages, a yet-to-be-created form of communication. "Thus, under a plain

---

[3] *See The First Text Message Celebrates 25 Years*, NPR, https://www.npr.org/2017/12/04/568393428/the-first-text-messages-celebrates-25-years (last visited Sept. 2, 2025) ("The first text message was transmitted Dec. 3, 1992.").

reading, Section 227(c)(5) of the TCPA does not regulate text messages." *Jones*, 2025 U.S. Dist. LEXIS 138371, at *11; *see also Davis*, 2025 U.S. Dist. LEXIS 167366, at *9 ("To succeed on his § 227(c)(5) [claim], Davis had to allege that he received at least two 'telephone calls.' He alleged receiving only text messages. And because text messages are not telephone calls, he has not stated a claim.").[4] The Court's inquiry can end here. A text message is not a "telephone call," and therefore Plaintiff's Subsection 227(c)(5) claim fails as a matter of law for want of any "telephone calls" at issue here.

### B. Plaintiff Also Lacks a Violation of an FCC Regulation Prescribed Under Subsection 227(c).

*Even if* the Court somehow concluded that Congress's 1991 reference to "telephone calls" somehow included the still-nonexistent "text message," Plaintiff's claim is also missing the second necessary element of his private right of action: telephone calls that violate an FCC regulation that was promulgated under the FCC's Subsection 227(c) statutory authority. Again, 47 U.S.C. § 227(c)(5) creates a private right of action for a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity **in violation of the regulations**

---

[4] There is further evidence that Congress, in 1991, did not understand the term "telephone call" to include "text message"—and still does not. In 2018, Congress added the term "text message" to the Truth in Caller ID Act, codified at 47 U.S.C. § 227(e), for which there is no private right of action, and which the FCC, Justice Department, and States enforce, 47 U.S.C. § 227(e)(5)-(6). *See* Consolidated Appropriations Act 2018, 115 Pub. L. No. 141. Thus, if Congress actually thought that "telephone call" had always encompassed "text messages," that Truth in Caller ID Act amendment would have been an entirely redundant, gratuitous legislative action. But the opposite inference is clearly the better one: because telephone calls are *not* text messages, Congress had to take additional action to expand a consumer-protection-related law's reach from telephone calls to text messages. That Congress has never done so with Subsection 227(c) is telling. *See In re Merchs. Grain by & Through Mahern*, 93 F.3d 1347, 1353-54 (7th Cir. 1996) ("We examine the statute according to the conventional rules of statutory construction: absent statutory definitions, we accord words and phrases their ordinary and natural meaning and avoid rendering them meaningless, redundant, or superfluous; we view words not in isolation but in the context of the terms that surround them; we likewise construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant[.]").

5

**prescribed under this subsection**." 47 U.S.C. § 227(c)(5) (emphasis added). Plaintiff's claim fails because it is missing (a) a "telephone call" *and* (b) a violation of a regulation that the FCC "prescribed under this subsection."

Plaintiff's Complaint alleges that Moriarty "violated 47 C.F.R. § 64.1200(c)[(2)] by initiating, or causing to be initiated, telephone solicitations to persons such as Plaintiff and the class members who registered their respective cellular or residential numbers with the DNC Registry[.]" Compl. ¶ 66. 47 C.F.R. § 64.1200(c)(2) prohibits making telephone solicitations to a "residential telephone subscriber who has registered his or her telephone number on the" Federal Trade Commission's ("FTC") National Do Not Call Registry ("NDNCR"). But the FCC only amended 47 C.F.R. § 64.1200(c), including 47 C.F.R. § 64.1200(c)(2), (by adding "or text messages" to 47 C.F.R. § 64.1200(e)) in a new rule that took effect in March 2024. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2023 TCPA Order"), CG Docket No. 02-278, Second Report and Order, 38 FCC Rcd. 12247 (Dec. 18, 2023); 89 Fed. Reg. 5098 (Jan. 26, 2024) (announcing March 26, 2024 effective date). But that rule, which this Court must review under *McLaughlin* and *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), was not promulgated under the FCC's long-expired statutory authority under Subsection 227(c) of the TCPA. As such, Plaintiff is not asserting a claim for a violation of a "regulation promulgated under this subsection," 47 U.S.C. § 227(c)(5), dooming his private right of action on this second, independent ground.

When Congress passed the TCPA in 1991, it directed the FCC to initiate a rulemaking within 120 days of December 20, 1991, to address "residential telephone subscribers' [] rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Congress directed the FCC to consider establishing national "do not call" systems, and to "develop proposed

6

regulations" that it determined were "most effective and efficient to accomplish the purposes of this section." 47 U.S.C. §§ 227(c)(1)(A), (E). Unlike the temporally open rulemaking authority that Congress granted the FCC in Subsection 227(b), Congress put a clear deadline on the FCC's Subsection 227(c) rulemaking authority: the FCC had to "conclude" its rulemaking under Subsection 227(c)(1) "[n]ot later than 9 months after December 20, 1991[.]" 47 U.S.C. § 227(c)(2); *cf.* 47 U.S.C. § 227(b)(2)(A)-(C) (granting the FCC authority to enact Subsection 227(b) rules with no deadline). Congress also directed the FCC to consider whether it needed additional "authority to further restrict telephone solicitations," and *if so*, to "propose specific restrictions to Congress[.]" 47 U.S.C. § 227(c)(1)(D).

In 1992, the FCC initiated—and concluded—a rulemaking pursuant to that time-limited grant of Congressional authority.[5] For the FCC's Subsection 227(c) rules, it ordered companies making live telemarketing phone calls to comply with call-time restrictions, 47 C.F.R. § 64.1200(c)(1), and with what is known as the "internal do-not-call list" rule, under which companies must timely honor requests from a consumer not to make *further* live sales calls to him or her. *See* 47 C.F.R. § 64.1200(d).

Congress—the only body that can create a private right of action[6]—conferred a private right of action in Subsection 227(c)(5) to any person who has "received more than one telephone **call** within any 12-month period by or on behalf of the same entity **in violation of the regulations prescribed under this subsection**." 47 U.S.C. § 227(c)(5) (emphasis added). Again, the only

---

[5] *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("1992 TCPA Order"), CC Docket No. 92-90, Report and Order, 7 FCC Rcd. 8752, ¶ 5 (1992).

[6] *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (language in a regulation cannot "conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.").

7

regulations that the FCC prescribed under *that* subsection of the TCPA—Subsection 227(c), pursuant to the time-limited grant of Congressional authority that expired in 1992—were call-time restrictions and its internal do-not-call list rules applicable to actual telemarketing phone calls. *See* 1992 TCPA Order, 7 FCC Rcd. 8752 at Appendix B. Thus, under *Sandoval*, violations of *those* rules carry a Congressionally authorized private right of action. But that is not Plaintiff's claim here.

Here, Plaintiff is essentially trying to parlay two later FCC orders, both issued many years after the FCC's 1992 regulations for which Congress did create a private right of action. The first was released on July 3, 2003, Compl. ¶ 61, and addressed live telemarketing phone calls to numbers on the FTC's NDNCR.[7] *See* 18 FCC Rcd. 14014 at Appendix A. The second is the FCC's 2023 TCPA Order, where the FCC expanded its interpretation of its 2003 NDNCR-related rules to now include text messages. 38 FCC Rcd. 12247 ¶ 26.

But both of these FCC orders were issued long after the 1992 expiration of Congress's time-limited grant of authority to the FCC under the TCPA to create regulations for which a private cause of action would exist under Subsection 227(c)(5). Thus, neither order provides Plaintiff with a private right of action to bring a claim under Subsection 227(c)(5) for his alleged receipt of text messages that allegedly violated 47 C.F.R. § 64.1200(c)(2).

      **1.    The FCC's 2003 TCPA Order did Not Create any Private Right of Action Under Subsection 227(c).**

When Congress enacted the TCPA in 1991, it gave the FCC the authority, under Subsection 227(c), to establish "a single national database [for] compil[ing] a list of telephone numbers of residential subscribers who object to receiving telephone solicitations[.]" 47 U.S.C. § 227(c)(3).

---

[7] *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003).

But Congress required the FCC, *if* it was going to establish such a database, to do so by September 20, 1992. *See* 47 U.S.C. § 227(c)(2). That was the *only* time Congress has ever granted the FCC authority to create a national do-not-call database, which would have had a corresponding private right of action. But the FCC chose *not* to create such a database by that 1992 deadline. *See* 1992 TCPA Order, 7 FCC Rcd. 8752 ¶ 14 (declining to create a national do-not-call database).

It was not until 2003, in its 2003 TCPA Order, that the FCC promulgated rules relating to a national do-not-call database. But those rules were not issued pursuant to authority from Subsection 227(c) of the TCPA. Rather, the FCC adopted rules implementing the FTC's newly created NDNCR,[8] and enacted 47 C.F.R. § 64.1200(c)(2) to marry up its regulations with the FTC's, which Congress gave it time-limited authority to do in The Do-Not-Call Implementation Act ("2003 DNC Act"), Pub. L. No. 108-10, § 3, 117 Stat. 557 (2003).[9] Thus, the FCC's 2003 NDNCR-related rules, including 47 C.F.R. § 64.1200(c)(2), were promulgated pursuant to the authority Congress temporarily granted the FCC in the 2003 DNC Act—not the TCPA-linked authority that expired in 1992. Accordingly, there is no Congressionally created private right of action under Section 227(c)(5) for violations of those 2003 NDNCR-related rules, of which 47 C.F.R. § 64.1200(c)(2) is one.[10]

---

[8] *See* Pub. L. No. 108-82, §1(a), 117 Stat. 1006 (2003) (Congress providing the FTC with authority "to implement and enforce a national do-not-call registry").

[9] *Id*. § 3 (Congress ordering the FCC, by September 7, 2003, to "issue a final rule" relating to the FTC's NDNCR after consulting and coordinating with the FTC "to maximize consistency with the rule promulgated by the [FTC] (16 C.F.R. § 310.4(b))."). In the 2003 DNC Act, Congress neither mentioned Subsection 227(c) generally, nor the FCC's expired grant of rulemaking authority in Subsections 227(c)(1)-(2) specifically.

[10] Congress and the FCC made clear that the FCC would enforce its new NDNCR-related rules in 47 C.F.R. § 64.1200(c)(2)—not that there would be a private right of action for a violation of that regulation. *See* 2003 DNC Act § 4(b)(5)-(6), 117 Stat. 558 (Congress required the FCC to submit annual reports of "*the enforcement activities of the [FCC]* pursuant to the [TCPA]" and a review

### 2. The FCC's 2003 NDNCR-Related Rules Do Not Apply to Text Messages.

In all events, the FCC's 2003 TCPA Order made clear that its new NDNCR-related rules did not apply to text messages. In that 2003 Order, the FCC expanded its rules *under Subsection 227(b)* of the TCPA to equate (or conflate) "call" with "text message"; the statutory authority or wisdom of that FCC conclusion is not at issue here, because this is not a Subsection 227(b) case. The FCC ruled that Congress's Subsection 227(b) proscription "encompasses both voice calls and **text calls** to wireless numbers including, for example, **short message service (SMS) calls**." 2003 TCPA Order, 18 FCC Rcd. 14014 ¶ 165 (emphasis added).[11] Thus, in 2003 the FCC treated "call" and "SMS" as synonymous *only for purposes of Subsection 227(b)* of the TCPA—i.e., calls to cell phones made with an 'automatic telephone dialing system' or artificial or prerecorded voice (what is colloquially referred to as a "robocall" or "robotext").

But in the very next paragraph, the FCC turned to its decision about the applicability of its new NDNCR-related rules to wireless numbers. There, the FCC clearly held that those rules only apply to "**live**" telemarketing calls—the calls where a human being calls you. The FCC used the word "live" ***four times*** in explaining its new NDNCR-related regulations:

> Although the same economic and safety concerns apply to all telephone solicitation calls received by wireless subscribers, the Commission has determined not to prohibit all **live telephone solicitations to wireless numbers**. The national do-not-call database will allow for the registration of . . . telephone numbers for those

---

of *the FCC's enforcement proceedings* under the TCPA. (emphasis added)); *see also* 2003 TCPA Order, 18 FCC Rcd. 14014 ¶ 36 (the FCC explaining that ***it*** would presume wireless subscribers registered on the NDNCR to be "residential subscribers[,]" but recognizing the need for "further proof of the validity of that presumption should ***we*** need to take enforcement action." (emphasis added)).

[11] The FCC's only cited authority for that proposition was one of its own Orders, which merely defined what an "SMS" *is*. *Id.* ¶ 165 & n.606 (defining "SMS" and citing Section 6002(B) of the Omnibus Budget Reconciliation Act of 1993, 17 FCC Rcd. 12985, 13051 (2002), which does not mention the TCPA, or purport to regulate SMS).

> subscribers who wish to avoid **live telemarketing calls**[.] . . . [] [S]ubscribers thus have a simple means of preventing most **live telemarketing calls** if they so desire. Moreover, relying on the do-not-call database to control **live telephone solicitations** recognizes that prohibiting such calls . . .

2003 TCPA Order, 18 FCC Rcd. 14014 ¶ 166 (emphasis added). The FCC's 2003 NDNCR-related rules clearly only applied to "live" telemarketing phone calls—not text messages, a subject the FCC had just addressed in the previous paragraph relating to Subsection 227(b) issues.

### 3. The FCC's 2023 TCPA Order did not Create a Private Right of Action Under Subsection 227(c) for Sales Text Messages.

Plaintiff's claim is about a *text message* to a *cell phone number* registered on the *NDNCR*. None of those three elements are included in the FCC's 1992 regulations promulgated under Subsection 227(c). Again, FCC rules relating to *live* sales *calls* to cellular telephone numbers registered on the NDNCR were not addressed until the FCC's 2003 TCPA Order. Then it took the FCC another twenty years, through its 2023 TCPA Order, to expand its 47 C.F.R. § 64.1200(c) and (d) rules to sales text messages, despite no new grant of statutory authority to do so.

The FCC acknowledged in its 2023 TCPA Order that, "[w]hile combating unwanted and illegal calls has long been one of the Commission's top consumer protection priorities, combating unwanted and illegal text messages is a comparatively new focus." 2023 TCPA Order, 38 FCC Rcd. 12247 ¶ 5.[12] Thus, the FCC simply expanded its 2003 TCPA Order, and therefore could not have issued that new rule under any existing statutory authority in 2023 tied to Congress's 1991 private right of action in Subsection 227(c)(5).

---

[12] The FCC also acknowledged that, until then, it had only "interpreted 'call' in section 227(b)(1)(A) of the [TCPA] to include both voice calls and text messages." *Id*. ¶ 5 & n.8 (emphasis added). Thus, the FCC acknowledged that its 2023 TCPA Order was an entirely new rule for purposes of its NDNCR-related and internal do-not-call list rules.

11

With its 2023 TCPA Order, the FCC reasoned that "it would be anomalous to conclude that text messages to wireless numbers are 'calls' for one part of the Commission's TCPA rules [i.e., those under Subsection 227(b)] but not for the DNC protections." *Id*. ¶ 27.  Calling its own, 20-year-old rule of not conflating "calls" with "text messages" under its DNC rules "anomalous" obviously cannot manufacture statutory authority out of whole cloth.[13]   First, Congress used different language in Subsections 227(b) and 227(c) of the TCPA for the types of services at issue. Subsection 227(b) is directed at autodialed and prerecorded/artificial voice "calls" (now known as "robocalls") *to cell phones*.  See 47 U.S.C. § 227(b)(1)(A).  But in Subsection 227(c), Congress authorized the FCC to issue rules "to protect **residential telephone subscribers**' privacy rights to avoid receiving **telephone solicitations** to which they object." 47 U.S.C. § 227(c)(1) (emphasis added).  Thus, Subsection 227(b) is explicitly directed to robocalls to cell phones—devices that later could actually receive text messages—while Subsection 227(c) required a rulemaking, **which had to be finished by 1992**, about "telephone solicitations" to "residential telephone subscribers," who, to this day, cannot receive text messages on their residential telephones (because you would need the type of phone service regulated under Subsection 227(b), i.e., cell phones).  The "anomalous" treatment of text messages between Subsections 227(b) and 227(c) is a feature—not a bug—of Congress's statutory framework.

Second, as noted above, the FCC has open-ended rulemaking authority under Subsection 227(b), but only long-expired rulemaking authority under Subsection 227(c)(2). *See* 47 U.S.C. §

---

[13] In *Loper Bright*, the Supreme Court held that the Administrative Procedure Act "requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority, and courts may not defer to an agency interpretation of the law simply because a statute is ambiguous." 603 U.S. at 369.  Rather, courts must "independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 371.  With this holding, the Supreme Court overruled *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and its progeny.

227(c)(2) (the "Commission shall conclude" its rulemaking by 1992). Again, Congress needed to provide the FCC with *new statutory authority* to cause it to implement NDNCR-related rules in 2003. Thus, when the FCC declared in 2003, contrary to common usage and legislative history, that a "call" is somehow also a "text message" *for purposes of Subsection 227(b)*, it at least had open rulemaking authority under Subsection 227(b), never mind the generous judicial indulgences of the now-repealed *Chevron* doctrine. At the same time, the FCC, pursuant to the 2003 DNC Act, did have additional authority from Congress to implement NDNCR-related rules, which expired on September 7, 2003. *See* 2003 DNC Act § 3. But the FCC then lacked, and still lacks, authority to make its NDNCR-related rules apply to text messages. Thus, a lack of statutory authority also explains the FCC's own "anomalous" regulatory regime.

Whatever statutory authority the FCC had to adopt NDNCR-related rules in 2003, or to enlarge them to text messages in December 2023, it had no right in 2003 or 2023 to create new private rights of action under Subsection 227(c)(5). *See Sandoval*, 532 U.S. at 291 (an agency regulation cannot "conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself."); *see also West Virginia v. EPA*, 597 U.S. 697, 723 (2022) (agencies "have only those powers given to them by Congress, and 'enabling legislation' is generally not an 'open book to which the agency [may] add pages and change the plot line.'" (citation modified)). A federal agency "'literally has no power to act'— including under its regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 301 (2022) (quoting *Louisiana Pub. Serv. Comm'n* v. *FCC*, 476 U. S. 355, 374 (1986)). The FCC's long-expired authority under Subsection 227(c)(1) cannot have provided it the necessary statutory authority for its 2023 TCPA Order. As such, Plaintiff's claim that Moriarty violated Sections 64.1200(c) by sending him text messages also lacks an FCC

regulation promulgated under Subsection 227(c), and thus has no private right of action exists for this claim under Subsection 227(c)(5). Plaintiff's Complaint must be dismissed.

## IV. CONCLUSION

The Court should dismiss Plaintiff's one-count TCPA Complaint with prejudice because Plaintiff lacks a private right of action for these text-message claims under Subsection 227(c)(5). Text messages are not telephone calls, and the FCC had no authority under Subsection 227(c) to promulgate any such regulation in any case.

Dated: September 12, 2025                                        Respectfully Submitted,

/s/ *Andrew J. Miroff*
Andrew J. Miroff (#21749-49)
Libby P. Moyer (#36910-71)
ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN  46282
Tel: (317) 236-2100
drew.miroff@icemiller.com
libby.moyer@icemiller.com

Joseph P. Bowser (*PHV Pending*)
ROTH JACKSON GIBBSON CONDLIN PLC
1519 Summit Avenue
Suite 102
Richmond, VA  23230
Tel: (804) 441-8701
jbowser@rothjackson.com

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a copy of the foregoing was served upon all parties of record via the Court's electronic filing system on September 12, 2025.

                                                  */s/ Andrew J. Miroff*
                                                  Andrew J. Miroff

ICE MILLER LLP
One American Square
Suite 2900
Indianapolis, IN  46282
drew.miroff@icemiller.com